UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ROBERT R. RANKEL,

                              Plaintiff,

              - against -

TOWN OF SOMERS, MARY BETH MURPHY,                        **OPINION AND ORDER**
individually and in her official capacity as Supervisor
of the Town of Somers, GUY GAGNE, Former Town            No. 11-CV-6617 (CS)
Engineer, SOMERS PD, OFFICER BARKER, GAIL
MURPHY,THOMAS MURPHY, PIETER WOELTGENS,
DEC OFFICERS BRIAN GILLIS, RICHARD MARTIN,
and BRIAN TOTH,

                              Defendants.
-------------------------------------------------------------------x

<u>Appearances</u>:
Robert Rankel
Katonah, New York
*Pro Se* Plaintiff

Terry August Rice
Rice & Amon
Suffern, New York
*Counsel for Defendants Town of Somers, Mary Beth Murphy, Guy Gagne, Somers PD and*
*Officer Barker*

Anthony John Messina
Messina & Associates
White Plains, New York
*Counsel for Defendants Gail Murphy, Thomas Murphy and Pieter Woeltgens*

Barbara Katherine Hathaway
Katherine Brady Dirks
New York State Office of the Attorney General
New York, New York
*Counsel for Defendants DEC Officers Brian Gillis, Richard Martin and Brian Toth*

Seibel, J.

Before the Court are the motions of Defendants Town of Somers ("Town"), Mary Beth Murphy, Guy Gagne, Somers Police Department ("SPD") and Officer Barker, (collectively, "Town Defendants"), (Doc. 107), and New York State Department of Environmental Conservation ("DEC") Officers Brian Gillis, Richard Martin and Brian Toth, (collectively, "DEC Defendants"), (Doc. 112), seeking dismissal of the Fourth Amendment Complaint ("FAC"), (Doc. 94), of Plaintiff Robert Rankel. For the following reasons, the Town Defendants' motion is GRANTED IN PART and DENIED IN PART, and the DEC Defendants' motion is GRANTED.

## I.   **Background**

For the purposes of Defendants' motions to dismiss, I accept as true the facts, but not the conclusions, as set forth in Plaintiff's FAC.

Plaintiff is the owner of a parcel of land located at 20 Sun Hill Road in Katonah, New York.[1]  (FAC ¶ 11.)  For many years, Plaintiff operated a farm business on his property without interference from the Town.  (*Id.* ¶ 21.)  In 2005, Gail and Thomas Murphy ("the Murphys") moved in next door to Plaintiff.  (*Id.* ¶ 49.)  Plaintiff alleges that the Murphys have conspired with another neighbor, Pieter Woeltgens, and their friends in the Town government to "take adverse action" against Plaintiff and his property, (*id.* ¶ 22), and to violate his constitutional rights, (*id.* ¶ 25.)  He brings this action *pro se* against the Town, Town Officials Mary Beth Murphy (Town Supervisor) and Guy Gagne (former Town Engineer), SPD[2] and Police Officer

---

[1] The Carlo Rankel trust owns the property, and Plaintiff serves as trustee of the trust.  (FAC ¶ 21.)  Plaintiff represents that he is authorized to bring this action on behalf of the trust, and I accept this representation as true.

[2] The FAC lists SPD in the caption even though the docket indicates that the case was terminated against SPD.  To the extent any claims remain against SPD, I dismiss those claims because SPD is not a proper party to the action where Plaintiff has also sued the Town.  *See Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 438 (S.D.N.Y. 2012) (dismissing claims against police department where municipality was also sued on the ground that department

Barker;[3] against DEC[4] and DEC Officers Brian Gillis, Richard Martin, and Brian Toth; and against his neighbors, the Murphys, Mr. Woeltgens, and Joseph Lopane[5] (collectively, "Neighbor Defendants").

Throughout the FAC, which spans some 130 paragraphs (many of which are repetitive and, at times, incoherent), Plaintiff pleads a series of events, from 2008 until 2013,[6] involving his property and Defendants. (*See generally* FAC.) He alleges that the Murphys and Mr. Woeltgens have "conspired with . . . Town officials thru [*sic*] emails, faxes, phone calls, and personal visits to the [Town] offices at the Elephant Hotel on [R]oute 22 in Somers, N.Y." (*Id.* ¶ 22.) He insists "there is no way [other than a conspiracy that] the Town would have independently addressed [any] issue" with his property because it is located "at the far end of a remote cull de sac [*sic*], and then, far back from the road." (*Id.*)

Plaintiff's allegations begin on or about October 25, 2008, when Police Officer Barker and DEC Officer Gillis entered his property and issued four appearance tickets[7] in his name. (*Id.*

---

lacked a "legal identity separate and apart from the municipality and cannot sue or be sued") (internal quotation marks omitted).

[3] Plaintiff's previous complaints listed additional Town officials as defendants, but Plaintiff has not included those officials in the FAC, and I need not address those individuals here.

[4] The FAC describes DEC, a New York State agency, as a defendant, (*see* FAC ¶ 17), but does not list DEC in the caption. To the extent Plaintiff intends to sue DEC, it is immune from suit by private citizens in federal court without state consent. *See New Holland Vill. Condo. v. DeStaso Enters.*, 139 F. Supp. 2d 499, 501-02 (S.D.N.Y. 2001) (dismissing claims against DEC on basis of sovereign immunity under Eleventh Amendment).

[5] All claims against Mr. Lopane have already been dismissed. (Doc. 99.)

[6] The FAC's most recent allegation is that Plaintiff is "back again in the Somers Court and wrongfully charged once again in retaliation and as a punishment for filing the instant complaint." (FAC ¶ 38.) Plaintiff does not specify what the charges are or what prompted them. Defendants allege that Plaintiff faces assault charges. (*See* Declaration of Terry Rice ("Rice Decl."), (Doc. 109), Exs. G, H.)

[7] An appearance ticket is a written notice issued by a public officer directing an individual to appear in the local criminal court at a specified time for a specified charge. *See* N.Y. Crim. Pro. L. § 150.10. Plaintiff does not specify the charges on these tickets, but presumably they relate to the wetland charges subsequently filed against him.

¶ 26.)  He alleges that the Officers arrived without a warrant or probable cause,[8] and came only after Mr. Woeltgens had filed a false complaint against Plaintiff with SPD.  (*Id.*)

A few days later, on October 28, 2008, former Town Engineer Gagne filed thirty-six counts of wetlands violations and two misdemeanor charges against Plaintiff.  (*Id.* ¶ 27.) Plaintiff alleges that the violations and charges were "baseless," (*id.*), and that the Town initiated these proceedings to retaliate against him for uncovering Town corruption, to benefit his neighbors, and to punish him for First Amendment-protected activity, (*id.* ¶¶ 27, 34).  According to the FAC, the charges were "terminated in Plaintiff's favor on July 23, 2011," after the Town failed "to prosecute . . . within the legal time frame."[9]  (*Id.* ¶ 27, 50.)

As a result of these charges, Plaintiff alleges that he spent thirty-three months in court sitting through "hours of hearings week after week, and month after month while being completely restrain[ed], confine[d], restricted from his movements and falsely imprisoned."  (*Id.* ¶ 27.)  He asserts that the Town Wetlands Code (under which he was charged) violates due process because it "does not give the accused the right to a meaningful pre-deprivation or prompt post-deprivation hearing."  (*Id.* ¶ 52.)

On November 2, 2008, Plaintiff "posted political signs on [his] property" in support of Councilman Harry Bolton, who was running against Supervisor Murphy in the Town election.

---

[8] The FAC does not allege that the officers searched Plaintiff's property at that time.  (*See* FAC ¶ 26.)  The FAC later alleges, in somewhat conclusory fashion, that "[i]t got to the point where [Defendants] where [*sic*] searching [Plaintiff's] properties from 2007 [to] 2011," (*id.* ¶ 31), but does not specify when these searches occurred.  To the extent Plaintiff intends to allege that a search occurred on October 25, 2008, he does not specify of what it consisted, and seems to equate entry onto his property with a search.  *See* Part III.C.5 below.

[9] Plaintiff later admits that the charges were not dismissed for failure to prosecute but rather that he "was forced into a settlement with the town."  (*See* Plaintiff's Memorandum of Law in Opposition to Defendant's Town of Somers et al., Motion to Dismiss ("P's Opp."), (Doc. 120), 3.)  I ordinarily would not consider a statement in a *pro se* plaintiff's memorandum of law that contradicts the complaint, *cf. Blue v. Macy's Herald Square*, No. 12-CV-5673, 2013 WL 3717777, at *1 n.3 (S.D.N.Y. July 16, 2013) (court "deems the statements in the Complaint to control" when presented with inconsistent statements in *pro se* plaintiff's memorandum of law), but this statement is against Plaintiff's interest, and in any event, the Town Defendants submit three documents as exhibits, which I may consider on the motion, *see* Part II.B.2 below, that confirm the existence of the settlement.

(*Id.* ¶¶ 34, 80.)[10]  He alleges that Murphy ordered his signs "be taken down and seized . . . by the town highway [department] employees," (*id.* ¶ 34), and further alleges that the Town sign laws are unconstitutional because they require citizens to remove their political signs, even when posted on private property, (*id.* ¶ 5).  Plaintiff asserts that Murphy's decision to seize his signs chilled his free speech in that he changed his political enrollment and is "afraid to speak out on the Town's corruption as much as he would like."  (*Id.* ¶ 36.)

Plaintiff further contends that Defendants have interfered with his right of way – a strip of land he owns that provides access to his property.  He alleges that Gagne forced him to block the entrance to the right of way, causing his property to be landlocked and further devalued.  (*Id.* ¶ 55.)  He asserts that Gagne took these actions in order to restrict Plaintiff's access to his property, and to enable the Murphys, who are good friends with Supervisor Murphy, to purchase the land.  (*Id.*)  Plaintiff also alleges that the Murphys refused to remove a willow tree that had fallen across the right of way and resulted in severe flooding.  (*Id.* ¶ 45.)  He asserts that the Murphys violated the Wetlands Code by failing to remove the tree, but the Town did not enforce the Code against them (again because the Murphys were friends with Supervisor Murphy) even though the Town had "vigorously prosecuted" him for baseless wetlands violations.  (*Id.*)

On December 9, 2011, Plaintiff reported the flooding in his right of way to DEC Officer Toth.  (*Id.* ¶ 58.)  Officer Toth investigated the complaint and, according to Plaintiff, declared that the Murphys were responsible for the flooding.  (*Id.* ¶ 56.)  In issuing his report, Officer Toth allegedly altered his findings and blamed Plaintiff for any damage to the property.  (*Id.*)  Plaintiff insists that Supervisor Murphy induced Officer Toth to change his report, alleging that

---

[10] Plaintiff later alleges that he posted the signs on November 2, 2011.  (*See* Affidavit in Opposition ("Rankel Aff."), (Doc. 121), 3.)  I will not consider this allegation because it contradicts the FAC, *see Blue*, 2013 WL 3717777, at *1 n.3, but even if I did consider the later date, it would not affect my analysis.

5

"on or about Oct [*sic*] 20, 2011," he learned that "Supervisor Murphy . . . called the [DEC] in order to have Toth's story changed."[11]  (*Id.* ¶ 59.)

Plaintiff brings three final allegations against Defendants.  He alleges that he has filed many Freedom of Information Law ("FOIL") requests with the Town, but the Town has "stalled, denied, altered, destroyed, or hidden" the responses to his requests in an attempt to "cover-up the on-going conspiracy and [Town] corruption."  (*Id.* ¶¶ 61-62, 67-68.)  He also alleges that his property should have been afforded Agricultural District Status, but the Town convinced the County to deny his request.  (*Id.* ¶ 62.)  He insists that the Town has never blocked "any similarly-situated small farmer," (*id.*), and that the Town's refusal to grant the request violates the State Agricultural District Law, (*id.* ¶ 63).[12]  He finally alleges that Defendants forced him to destroy 300 bamboo trees on his property.  (*Id.* ¶ 48.)

Plaintiff filed his initial complaint on September 13, 2011, (Doc. 2), and subsequently amended it four times, (Docs. 29, 87, 93, 94).[13]  The FAC, filed on January 2, 2013, sets forth myriad claims against Defendants under the First, Fourth, Fifth, Sixth and Fourteenth Amendments.  Plaintiff contends that Defendants violated his right of free speech, of free association, and to petition for redress of grievances; his right to be free from illegal search and seizure of his property and person; his right to privacy; his right to counsel; his right to equal protection; and his procedural and substantive due process rights.  He further contends that the

---

[11] Plaintiff does not specify how he learned that Supervisor Murphy contacted Officer Toth.  I also note that Plaintiff's timeline of events is nonsensical here; he alleges that Murphy called Toth in October 2011 *before* Plaintiff reported the flooding to Toth in the first place.

[12] The FAC lists "Article 25-AA 300 and Section 303, [*sic*] and 305" as the relevant provisions of state law, (FAC ¶ 63), but pleads no facts to plausibly suggest Defendants violated the law, or that any violation results in a constitutional claim.  To the extent Plaintiff intends to allege an Equal Protection Clause violation, he has failed to provide facts supporting the conclusion that he was treated differently from similarly situated farmers.  *See* Part III.C.2 below.

[13] Plaintiff's Third Amended Complaint in the instant case overlapped with his Second Amended Complaint in a separate action, *Rankel v. Leibell*, No. 12-CV-1377.  I dismissed *Leibell* and allowed Plaintiff one final opportunity to amend in the instant case.  (*See* Minute Entry of Dec. 5, 2012.)

6

"Code of Ethics, tax exemptions, Wetland laws, Sign Display Town Codes, Illicit discharges, and most of the town codes . . . are very vague, unclear and overly burdensome to the average homeowner."  (FAC ¶ 6.)  Plaintiff also purports to bring state law claims.  (*See id.* ¶ 9.)

## II.  Legal Standards and Preliminary Issues

The Town Defendants move to dismiss pursuant to Rules 12(b)(1)[14] and 12(b)(6).  The DEC Defendants move to dismiss pursuant to Rules 12(b)(5) and 12(b)(6).  The Neighbor Defendants have not moved to dismiss.

### A.  Legal Standards

#### 1.  Rule 12(b)(5)

On a motion to dismiss pursuant to Rule 12(b)(5) for deficient service of process, "the plaintiff bears the burden of establishing that service was sufficient."  *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010) (internal quotation marks omitted); *see TAGC Mgmt., LLC v. Lehman*, 842 F. Supp. 2d 575, 580 (S.D.N.Y. 2012).  A plaintiff must meet this burden by making a prima facie case of proper service "through specific factual allegations and any supporting materials," *Kwon v. Yun*, No. 05-CV-1142, 2006 WL 416375, at *2 (S.D.N.Y. Feb. 21, 2006),[15] and conclusory statements alone are not sufficient to overcome a defendant's sworn affidavit that service was improper, *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002).  "If service of process was not sufficient, the Court has discretion to dismiss the action, but dismissal is not mandatory."  *Id.*

#### 2.  Rule 12(b)(6)

---

[14] The Town Defendants list Rule 12(b)(1) as a ground for dismissal but fail to elaborate on this point.   Because I must assess the court's jurisdiction *sua sponte*, *see Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006), I consider whether jurisdiction is proper and conclude that Plaintiff has pleaded a "colorable claim" under § 1983.  At the same time, I note that many of Plaintiff's allegations – e.g., that the Town refused to fulfill FOIL requests or grant land applications – involve state law, not federal constitutional, violations.

[15] Copies of all unpublished decisions cited herein will be sent to Plaintiff.

7

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam);

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  But while pleadings of a *pro se* party should be read "to raise the strongest arguments [that they] suggest," *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (internal quotation marks omitted), dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements, *see Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997); *accord Honig v. Bloomberg*, No. 08-CV-541, 2008 WL 8181103, at *4 (S.D.N.Y. Dec. 8, 2008), *aff'd*, 334 F. App'x 452 (2d Cir. 2009) (summary order).

    B.  <u>Documents Considered on the Motions to Dismiss</u>

        1.  <u>Legal Standard</u>

When deciding a motion to dismiss under Rule 12(b)(6), the Court's "review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *see Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).  There are limited circumstances, however, when it is appropriate for a court to consider documents outside of the complaint on a motion to dismiss. *See Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (court may consider "documents 'integral' to the complaint and relied upon in it . . . and [] facts of which judicial notice may be taken").  When matters outside the pleadings that do not fall into these limited categories are included on a 12(b)(6) motion, "a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment . . . and afford all parties the opportunity to present supporting material." *Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000) (internal quotation marks omitted).

In considering a Rule 12(b)(5) motion, however, "a Court must look to matters outside the complaint to determine whether it has jurisdiction." *Mende v. Milestone Tech., Inc*., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (internal quotation marks omitted).

### 2.   Documents Submitted

In support of their motion to dismiss, the Town Defendants submit the following documents:  a Supporting Deposition of Mr. Gagne, (Rice Decl. Ex. B), Certificate of Disposition, (*id.* Ex. C), and Stipulation of Settlement, (*id.* Ex. D), all relating to Plaintiff's wetlands violations; a Justice Court decision, dated April 21, 2011, (*id.* Ex. E); Supervisor Murphy's Oath of Office, dated December 30, 2007, (*id.* Ex. F); a Case History Report, (*id.* Ex. G), and Supporting Deposition of Carla Rankel, (*id.* Ex. H), both relating to assault charges against Plaintiff; and Plaintiff's FOIL requests from April 2012, (*id.* Ex. I).[16]  The DEC Defendants submit Officer Toth's report, dated November 30, 2011, (Dirks Decl. Ex. A),[17] and sworn declarations from Officers Toth, Gillis and Martin regarding service of process, (Docs. 115, 116, 117).

In opposition, Plaintiff submits a sworn affidavit, to which he attaches the following documents:  the deed to his property, (Rankel Aff. Ex. A); title to the Murphys' property, (*id.* Ex. B); Notices of Environmental Violations from 2005, (*id.* Ex. C); a 2006 appeal to the Zoning Board of Appeals, (*id.* Ex. D); a 2007 expert report finding no wetlands on Plaintiff's property, (*id.* Ex. E); a video clip of a May 5, 2008 Town Board Meeting, (*id.* Ex. F); emails from January 2008 between Supervisor Murphy and Gail Murphy about Plaintiff's right of way, along with a letter from Mr. Gagne about an August 2008 altercation involving a dump truck on Plaintiff's

---

[16] Defendants also attach the decision in *Old St. George's LLC v. Bianco*, No. 08-CV-5321, 2009 WL 8668386 (S.D.N.Y. May 08, 2009), (Rice Decl. Ex. J), which I may consider on the motion.

[17] "Dirks Decl." refers to the Declaration of Katherine Dirks.  (Doc. 114.)

property, (*id.* Ex. G); police reports involving Plaintiff and the Neighbor Defendants, (*id.* Ex. H); letters in response to Plaintiff's FOIL requests, (*id.* Ex. I); a copy of the Town Wetlands Code, (*id.* Ex. J); emails between Plaintiff and Town Councilman Harry Bolton, along with miscellaneous documents related to former Councilwoman Lynette Burns, (*id.* Ex. K); Plaintiff's Omnibus Motion, dated January 21, 2011, seeking dismissal of charges filed against him, (*id.* Ex. L); news articles about Councilman Bolton's election campaign, (*id.* Ex. M); an August 21, 2005 title report for Plaintiff's property, (*id.* Ex. N); and an affidavit of service of Carlo Rankel, dated January 2, 2013, for the DEC Defendants, (*id.* Ex. O).

On the Rule 12(b)(5) motion, I will consider the sworn declarations from Officers Toth, Gillis and Martin, (Docs. 115, 116, 117), along with the affidavit of service from Carlo Rankel, (Rankel Aff. Ex. O).

On the Rule 12(b)(6) motion, the Town Defendants argue that I should disregard Plaintiff's affidavit and attached documents. (Town Ds' Reply Mem. 3.)[18] They assert there is no authority for a court to consider a party's affidavit or the voluminous attached documents on a motion to dismiss, and suggest that these submissions are Plaintiff's attempt to further amend the FAC. (*Id.*) Plaintiff responds that I may consider these documents, without converting the motion into one for summary judgment, because he is proceeding *pro se.* (P's Opp. 7-8.) There is precedent for considering a *pro se* plaintiff's affidavit on a motion to dismiss, *see Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987), but the same is not true for the attached documents, which largely fall outside the scope of documents that I may consider, *see Weiss*, 762 F. Supp. 2d at 567 (listing documents that may be considered on motion to dismiss). Nevertheless I have considered them and they do not affect my analysis.

---

[18] "Town Ds' Reply Mem." refers to Defendants' Reply Memorandum of Law in Support of Motion to Dismiss Complaint. (Doc. 135.)

As for the documents submitted by Defendants, I will consider the Certificate of Disposition, (Rice Decl. Ex. C), Stipulation of Settlement, (*id.* Ex. D), and Justice Court decision, (*id.* Ex. E); they are matters of public record of which I may take judicial notice for the fact of what is said. *See, e.g.*, *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 205 n.4 (2d Cir. 2003) (taking judicial notice of related district court decision); *Smith v. City of N.Y.*, No. 12-CV-4572, 2013 WL 6158485, at *1 (S.D.N.Y. Nov. 15, 2013) (taking judicial notice of certificate of disposition). I will consider Plaintiff's FOIL requests, (Rice Decl. Ex. I), as I find them to be integral to the FAC because Plaintiff alleged that the denial of these requests violated his rights, but they do not affect my analysis. I will also consider Officer Toth's report, (Dirks Decl. Ex. A), because it is incorporated by reference and integral to the FAC, although it does not affect my analysis either. I need not consider the Supporting Deposition of Mr. Gagne, (Rice Decl. Ex. B), nor the Case History Report, (*id.* Ex. G), or Supporting Deposition of Ms. Rankel, (*id.* Ex. H), relating to Plaintiff's assault charges. Nor need I consider Supervisor Murphy's Oath of Office, (*id.* Ex. F), which does not appear to be a matter of public record.

## III.   **Discussion**

### A.   Insufficient Service of Process

Rule 4(e) of the Federal Rules of Civil Procedure governs the service of a complaint in federal court. The Rule provides that service may be effectuated by: (1) service consistent with the rules of the state in which the district court is located; or (2) personal delivery, delivery at the person's place of abode with someone of suitable age and discretion who resides there, or delivery upon an authorized agent for service. Fed. R. Civ. P. 4(e)(1), (2). Section 308 of the New York Civil Practice Laws and Rules outlines the permissible ways to serve a natural person in New York. *See* N.Y. C.P.L.R. 308.

The DEC Defendants move to dismiss on the ground that Plaintiff has failed to serve them with the FAC.  (*See* DEC Mem. 7-9.)[19]  In support of their motion, the Officers submit sworn declarations attesting to the fact that they were never served.  (Docs. 115, 116, 117.)  In response, Plaintiff submits an Acknowledgment of Service form indicating that he had the DEC Defendants served by United States mail on January 1, 2013.  (Rankel Aff. Ex. O.)  Plaintiff's submission is unhelpful, however, because service by United States mail is insufficient under federal and New York law.  *See Qader v. Cohen & Slamowitz*, No. 10-CV-1664, 2011 WL 102752, at *4 (S.D.N.Y. Jan. 10, 2011) (certified mail is insufficient under New York and federal law); *Bender v. GSA*, 539 F. Supp. 2d 702, 705 (S.D.N.Y. 2008) (same).  I therefore find that Plaintiff has failed to satisfy his burden to demonstrate proper service of process.

The decision to dismiss a complaint for insufficient service of process is discretionary, but I find dismissal proper here because I have repeatedly reminded Plaintiff of his obligation to serve Defendants, (*see* Docs. 8, 17, 28, 31, 39, 43, 83), and Plaintiff has failed to do so.  I alerted Plaintiff to the fact that not all Defendants had been served prior to filing his FAC, (*see* Minute Entry of Dec. 5, 2012), but Plaintiff still failed to serve the DEC Defendants.[20]  I therefore dismiss the FAC against the DEC Defendants for insufficient service of process.

### B.  Time-Barred Claims

The DEC Defendants move in the alternative to dismiss any § 1983 claims arising from Officer Gillis's October 25, 2008 entry onto Plaintiff's property as time-barred.  (*See* DEC Mem. 9-12.)  They contend that these claims accrued on October 25, 2008, and that the statute of limitations expired three years later on October 25, 2011.  Plaintiff did not file his complaint

---

[19] "DEC Mem." refers to Defendants Brian Gillis, Richard Martin, and Brian Toth's Memorandum of Law in Support of Their Motion to Dismiss.  (Doc. 113.)

[20] Prior to that conference, on April 20, 2012, Defendants agreed to obtain copies of future complaints on ECF, but the DEC Defendants were not defendants at that time.  The DEC Defendants were not added until October 24, 2012.

against the DEC Defendants until October 24, 2012, one year after the time to file had expired. Plaintiff fails to respond to this argument.  (*See* DEC Reply Mem. 2-3.)[21]

I agree with the DEC Defendants that any § 1983 claims arising from the events of October 25, 2008 are time-barred.  The statute of limitations for a § 1983 action arising in New York is three years.  *See Lynch v. Suffolk Cnty. Police Dep't, Inc.*, 348 F. App'x 672, 674 (2d Cir. 2009) (summary order).  When a § 1983 accrues, however, is determined by federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  Under federal law, a claim arising under § 1983 "accrues" when the plaintiff "knows or has reason to know of the injury which is the basis of his action."  *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002).  With the exception of Plaintiff's claim for malicious prosecution, all claims accrued on October 25, 2008, and Plaintiff had until October 25, 2011, to bring these claims against the DEC Defendants.  Plaintiff failed to do so, and therefore any claims (except for malicious prosecution) arising from Officer Gillis's entry onto Plaintiff's property are time-barred.

Plaintiff alleges in the FAC that "the conduct . . . is ongoing and continuous, so there should be an [e]quitable tolling of the statute of limitations for the continuous [d]eprivation of civil rights."  (FAC ¶ 71.)[22]  Construing the FAC liberally, Plaintiff seems to suggest that the "continuing violation" doctrine applies to save his otherwise time-barred claims.  Under the continuing violation doctrine, "[w]here a plaintiff can demonstrate an ongoing or continuing violation of his federally protected rights, the plaintiff is entitled to bring suit challenging all conduct that was part of the violation, even conduct that occurred outside the limitations period." *Ruane v. Cnty. of Suffolk*, 923 F. Supp. 2d 454, 459 (E.D.N.Y. 2013) (internal quotation marks

---

[21] "DEC Reply Mem." refers to the DEC Defendants' Reply Memorandum of Law in Further Support of their Motion to Dismiss.  (Doc. 136.)

[22] Equitable tolling is "only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights."  *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (internal quotation marks, citations and alterations omitted).  Plaintiff identifies no such circumstances.

omitted). "[C]ourts of this circuit consistently have looked unfavorably on continuing violation arguments . . . and have applied the theory only under compelling circumstances." *Id.* (quoting *Blankman v. Cnty. of Nassau*, 819 F. Supp. 198, 207 (E.D.N.Y. 1993)).

I find the continuing violation doctrine inapplicable here because Officer Gillis's entrance onto Plaintiff's property is a "discrete act" that starts the statute of limitations running, even if there were subsequent entrances on the property. *See Kellogg v. N.Y. State Dep't of Corr. Servs.*, No. 07-CV-2804, 2009 WL 2058560, at *1 (S.D.N.Y. July 15, 2009) ("[T]he continuing-violation doctrine does not apply to discrete acts, but only to ongoing circumstances that combine to form a single violation that cannot be said to occur on any particular day."); *see also Libbey v. Vill. of Atl. Beach*, No. 13-CV-2717, 2013 WL 5972540, at *20 (E.D.N.Y. Nov. 04, 2013) (no continuing violation even though allegations "span several years" where time-barred conduct was discrete act occurring on specific date). Accordingly, even if proper service had been made, I would dismiss all claims (except for malicious prosecution) arising from Officer Gillis's October 25, 2008 entry onto Plaintiff's property.[23]

### C. Failure to State a Claim

The Town and DEC Defendants[24] move to dismiss on the ground that Plaintiff has failed to state a claim upon which relief may be granted. To state a claim under § 1983, a complaint must allege that the defendant (1) deprived the plaintiff of rights secured by the Constitution and laws of the United States, (2) while acting under color of state law. 42 U.S.C. § 1983.

#### 1. First Amendment

---

[23] I also find that neither the relation back doctrine under Fed. R. Civ. P. 15(c), nor the reference to the October 25, 2008 event in the related 12-CV-1377 action, saves the otherwise time-barred claims. (*See* DEC Ds' Mem. 10 n.8, 11-12.)

[24] I consider the DEC Defendants' arguments as alternative grounds for dismissal, having already dismissed the FAC on the ground of insufficient service of process and dismissing as time-barred all claims (except for malicious prosecution) arising from Officer Gillis's entrance onto Plaintiff's property in October 2008.

To plead a First Amendment retaliation claim, a plaintiff must show: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). On a motion to dismiss, the court "must be satisfied that such a claim is supported by specific and detailed factual allegations, which are not stated in wholly conclusory terms." *Velez v. Levy*, 401 F.3d 75, 97 (2d Cir. 2005) (internal quotation marks omitted).

Plaintiff alleges that he engaged in protected First Amendment activity when, among other things, he posted political signs on his property supporting the candidacy of Councilman Bolton, registered as a Democrat, spoke out against Town corruption and filed FOIL requests. (FAC ¶ 81.) He alleges that Defendants had "full knowledge" of these actions, (*id.*), and in retaliation, prosecuted him for baseless wetland violations, dragged out these proceedings for thirty-three months, repeatedly entered his property, interfered with the use and enjoyment of his property, prevented him from obtaining an Agricultural District inclusion, denied him other applications, conspired with the DEC Defendants to alter records, denied his FOIL requests and removed his political signs from his property, (*id.* ¶ 82). He contends that this retaliation has "chilled" his First Amendment speech. (*Id.* ¶ 83.)

The Town Defendants move to dismiss on the ground that Plaintiff's conduct is not protected First Amendment activity, and even if it were protected, Plaintiff has failed to allege that Defendants' actions were motivated by the exercise of his First Amendment rights. (*See* Town D's Mem. 3-6.) The Town Defendants further argue that Plaintiff's First Amendment expression has not been chilled, and in any event, Defendants would have taken the same actions against Plaintiff in the absence of any protected activity. (*See id.* at 6-7.)

Assuming that Plaintiff's conduct is protected activity – which at least some of it clearly seems to be – Plaintiff fails to plead a causal connection between this activity and any retaliatory conduct.  A plaintiff must allege "a causal connection . . . sufficient to warrant the inference that the protected speech was a substantial motivating factor" in the adverse action.  *Blum v. Schlegel*, 18 F.3d 1005, 1010 (2d Cir. 1994).  Plaintiff alleges four protected activities, and lists a host of allegedly retaliatory actions, but does not provide a connection, temporal or otherwise, rendering plausible the conclusion that these actions were undertaken to retaliate against him for his protected speech.  *See Razzano v. Cnty. of Nassau*, 599 F. Supp. 2d 345, 352 (E.D.N.Y. 2009) (dismissing claim where plaintiff failed to allege "causal relationship" between protected activity and defendants' actions).  Much of the FAC is conclusory – Plaintiff, for example, does not specify when "he spoke out against Town corruption," (FAC ¶ 81), or how this speech resulted in adverse action.  But even where Plaintiff is specific – for example, that on November 2, 2008, Town highway department employees removed from his property signs supporting Supervisor Murphy's opponent, (*id.*) – he offers no facts plausibly supporting the conclusion that those employers were acting at Supervisor Murphy's direction, let alone that any such direction was based on the content of the signs or Plaintiff's previous speech.  Plaintiff's failure to present facts plausibly suggesting either Murphy's (or Gagne's) personal participation in this incident, *see Spavone v. N.Y.S. Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.")*; Williams v. Roberts*, No. 11-CV-029, 2012 WL 760777, at *4 (N.D.N.Y. Mar. 07, 2012) (plaintiff must allege how defendant knew of protected activity to state a claim for First Amendment retaliation), or a retaliatory motive on the part of whoever removed the signs, proves fatal to his claim.

Nor does temporal proximity provide an inference of causal connection.  The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001), but courts have found a "limit [of] two or three months" to be reasonable, *see Adams v. Ellis*, No. 09-CV-1329, 2012 WL 693568, at *16 (S.D.N.Y. Mar. 2, 2012), *aff'd*, 536 F. App'x 144 (2d Cir. 2013) (summary order), and it is obvious that protected activity must precede any purported retaliation to state a First Amendment retaliation claim, *see Parkash v. Town of Se.*, No. 10-CV-8098, 2011 WL 5142669, at *7 (S.D.N.Y. Sept. 30, 2011), *aff'd*, 468 F. App'x 80 (2d Cir. 2012) (summary order).  Plaintiff's allegation that Defendants "c[ame] onto his property" and "fil[ed] wetlands violations" against him in retaliation for his political signs, (FAC ¶ 82), is plainly implausible where these acts occurred *before* he posted any signs,[25] s*ee Parkash*, 2011 WL 5142669, at *7 (no "causal connection" where alleged retaliatory "prosecution preceded" protected activity).  Nor has Plaintiff alleged any other retaliation occurring close in time to when he posted his signs or engaged in other protected activity.  I therefore dismiss Plaintiff's retaliation claim because he fails to plausibly allege that Defendants acted in retaliation for his protected activity.[26]

---

[25] For purposes of this analysis, I accept as true Plaintiff's allegations that Defendants entered his property and filed wetlands violations against him in October 2008, and that Plaintiff posted signs on his property on November 2, 2008.  (*See* FAC ¶¶ 26-27, 34.)  Even if I were to consider Plaintiff's later allegation that he posted these signs in November 2011, (*see* Rankel Aff. 2), this would not affect my analysis.  First, a later date makes the relationship between these events wholly attenuated.  Second, the only event that follows closely in time to November 2011 is Officer Toth's alleged alteration of his report, (*see* FAC ¶ 56), but Plaintiff presents no facts rendering it plausible that Toth, a State DEC officer, knew of or cared about the signs that the Town highway department employees removed.  While Plaintiff alleges that Toth acted under the influence of Murphy, by Plaintiff's own admission Murphy allegedly influenced Toth in October 2011 *before* he posted his signs.  Nor does Plaintiff present facts plausibly suggesting why a DEC officer would take orders from a Town supervisor.

[26] Because I find causation lacking, I need not address Defendants' alternate arguments that Plaintiff's speech has not been chilled, and even if it were chilled, that Defendants would have engaged in the same conduct.  I briefly mention, however, that "[c]hilled speech is not the *sine qua non* of a First Amendment claim," and a plaintiff may bring a claim "*either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm."  *Dorsett*, 732 F.3d at 160.  For this reason, even if Plaintiff's speech were not chilled in that he continued to file FOIL requests, *see Wood v. Town of E. Hampton*, No. 08-CV-4197, 2010 WL

Separate from his retaliation claim, Plaintiff contends that the Town sign laws, found under Chapter 170, 174 and 142 of the Town Code, violate the First Amendment.  He alleges that the laws are "vague, unclear and overly burdensome," (FAC ¶¶ 5-6), and "force citizens to take down their political signs, even when posted on private property," (*id.* ¶ 5).  He further alleges that the Town "took down [his] signs on his own property, which was a direct violation of his [First Amendment] rights."  (*Id.* ¶ 5.)  Construing the FAC liberally, I find that Plaintiff brings a facial and as-applied challenge to the Town sign laws.

A facial challenge "considers only the text of the statute itself, not its application to the particular circumstances of an individual."  *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 174-75 (2d Cir. 2006).  Facial challenges are "'generally disfavored,' because facial invalidation is 'strong medicine' that 'has been employed . . . sparingly and only as a last resort.'"  *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 611 (S.D.N.Y. 2013) (quoting *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998)).

An as-applied challenge, on the other hand, requires "an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right."  *Field Day*, 463 F.3d at 174-75.  "Facial and as-applied challenges differ *in the extent to which* the invalidity of a statute need be demonstrated (facial, in all applications; as-applied, in a personal application)."  *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 228 (2d Cir. 2006) (emphasis in original), *overruled on other grounds*, *Bond v. United States*, 131 S. Ct. 2355 (2011); *see Congregation Rabbinical Coll.*, 915 F. Supp. 2d at 611.

---

3924847, at *7 (E.D.N.Y. Sept. 30, 2010), Plaintiff still may have been harmed.  This injury, however, does not make for a First Amendment claim absent a plausible inference of causation – which Plaintiff has failed to provide. I also note that the argument that the Town would have taken the same actions absent Plaintiff's speech is something a finder of fact might believe, but is hardly a defense the Court can find as a matter of law on a motion to dismiss in this case.

The Town sign laws are largely confined to Chapter 170, Article 22, § 123-129 of the

Town Code.[27]  Plaintiff alleges that the laws are "vague, unclear, and overly burdensome," (FAC

¶ 6), that they force citizens to remove their political signs, (*id.* ¶ 5), and that Town highway

department employees removed from his property signs supporting Supervisor Murphy's

opponent pursuant to these laws and Murphy's orders, (*id.* ¶ 34).  Neither the Town Defendants

nor Plaintiff addresses these allegations in their memoranda of law.  From the Court's review,[28]

without the benefit of any briefing from the parties, the Town sign laws seemingly permit three

types of signs on residential properties[29] – "business or professional" signs; "for sale" or "to let"

signs; and certain signs in "multifamily residence developments," Chap. 170, Art. 22, § 125 – but

make no allowance for political signs.[30]  The removal of a political sign for violation of the

Town sign laws, thus preventing political speech under a regime that is not a content-neutral,

reasonable time, place and manner restriction, *see generally Ward v. Rock Against Racism*, 491

U.S. 781, 791 (1989), plausibly states a First-Amendment violation, *see Sugarman*, 192 F. Supp.

2d at 301 (striking down an "ordinance [that] favors certain types of commercial speech over

---

[27] Plaintiff purports to challenge Chapters 142, 170 and 174 (actually A174), but Chapters 142 and A174 do not apply to the instant case.  Chapter 142 is titled "Sidewalk Maintenance and Repair," and although it provides, in part, that "[a]ffixing signs . . . to light fixtures, trash receptacles or benches is prohibited," Chap. 142, § 7, Plaintiff does not allege that he affixed his sign to anything, and this seems to be a reasonable, content-neutral restriction. Chapter A174 is titled "Subdivision Road Construction Specifications," and the only section in that chapter that relates to signs involves "street name signs," Chap. A174, Art. 6 § 7, and has no application here.

[28] Although the parties do not submit the Town sign laws, I may take judicial notice of them.  *See* Fed. R. Evid. 201(b) (court may take notice of facts "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

[29] I will presume for present purposes that the signs were posted on property in a residential district.  There are different rules for commercial districts.

[30] Section 127 sets forth notice requirements prior to posting certain types of signs on residential properties, *see* Chap. 170, Art. 22, § 127, and even if political signs were permitted with notice, this too would be an impermissible content-based restriction.  *See Sugarman v. Vill. of Chester*, 192 F. Supp. 2d 282, 301 (S.D.N.Y. 2002).  Because the Town Defendants have not clarified the reach of the Town law (let alone addressed Plaintiff's claim), I will allow the challenge to proceed.  I also note, for present purposes, that I accept as true the allegation that Plaintiff posted signs on his property, not Town property.  If that proves untrue, the Court's analysis may change as well.  *Cf. Abel v. Town of Orangetown*, 724 F. Supp. 232, 235 (S.D.N.Y. 1989) (holding that "an ordinance restricting the posting of signs [including political signs] on the public ways to preserve the esthetic appeal of the town is within the bounds of the constitution").

noncommercial [political] speech on the basis of its content").  Plaintiff's challenge to the Town

sign laws (both facial and as-applied) thus survives as to the Town at this stage.[31]

     2.  Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment requires the government to

treat similarly situated persons alike."  *Missere v. Gross*, 826 F. Supp. 2d 542, 560 (S.D.N.Y.

2011).  Where, as here, Plaintiff does not claim to be a member of a protected class, he may

bring an equal protection claim under one of two theories:  selective enforcement or "class of

one."  *See id.*

To state a selective-enforcement claim, a plaintiff must plead:  (1) he was "treated

differently from other similarly situated" individuals and (2) "that such differential treatment was

based on impermissible considerations such as race, religion, intent to inhibit or punish the

exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *Cine SK8,*

*Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007) (internal quotation marks omitted);

*see Missere*, 826 F. Supp. 2d at 560.[32]

Under a class-of-one theory, a plaintiff must allege that he has been "intentionally treated

differently from others similarly situated and that there is no rational basis for the difference in

treatment."  *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010); *see*

*Missere*, 826 F. Supp. 2d at 560.  A plaintiff must plead "an extremely high degree of similarity

between themselves and the persons to whom they compare themselves."  *Ruston v. Town Bd for*

---

[31] I will dismiss these claims as to the DEC and Neighbor Defendants because neither is responsible for the Town sign laws, and the FAC does not plead either party's involvement in the application of the Town laws.  Likewise, because there are no facts plausibly supporting the personal involvement of Murphy or Gagne, this claim will go forward only against the Town.

[32] To the extent Plaintiff argues that he was treated differently from those similarly situated because he exercised his constitutional right to free speech, his equal protection claim "coalesces" with his First Amendment retaliation claim.  *See Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 372 (S.D.N.Y. 2011) (internal quotation marks omitted).

*Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (internal quotation marks omitted).  They

must establish that

> (i) no rational person could regard the circumstances of the plaintiff to differ from
> those of a comparator to a degree that would justify the differential treatment on
> the basis of a legitimate government policy; and (ii) the similarity in
> circumstances and difference in treatment are sufficient to exclude the possibility
> that the defendants acted on the basis of a mistake.

*Id.* at 59-60.  "[P]laintiffs cannot attempt to federalize every . . . dispute with a municipality by

simply uttering the magic words 'class-of-one[,]'" *Crippen v. Town of Hempstead*, No. 07-CV-

3478, 2013 WL 1283402, at *8 (E.D.N.Y. Mar. 29, 2013); they instead must point to "evidence

that . . . similarly situated individuals received more favorable treatment," *id.*

     Whether construed as a selective-enforcement or class-of-one claim, I dismiss Plaintiff's

equal protection claim because he has failed to allege that he was treated differently from

similarly situated individuals.  Although Plaintiff asserts that he was "selectively prosecut[ed] . .

. for wetland and other criminal offenses [when the Town] refus[ed] to enforce the same laws . . .

against the Neighbor Defendants," (FAC ¶ 87), that the "Town did not engage in the described

wrongful conduct in regard to other similarly-situated citizens," (*id.*), and that the conduct was

"[a]rbitrary, [c]apricious, irrational, evil, fraud and in bad faith," (*id.*), Plaintiff has provided no

facts from which it may be plausibly inferred that these Neighbor Defendants or any other

citizens were similarly situated.  He provides no information about their properties, situations or

conduct that would support the conclusory statement that they were similarly (let alone

extremely similarly) situated.  *See MacPherson v. Town of Southampton*, 738 F. Supp. 2d 353,

371 (E.D.N.Y. 2010) (dismissing equal protection claim, whether pled as a "selective

enforcement" or "class-of-one" claim, because complaint failed to "identify any comparators or similarly situated entities"). I therefore dismiss Plaintiff's equal protection claim.[33]

    3.  <u>Procedural Due Process</u>

In order to bring a claim for violation of the procedural due process rights guaranteed by the Fourteenth Amendment, a plaintiff must show "(1) that he possessed a protected liberty or property interest; and (2) that he was deprived of that interest without due process." *Rehman v. State Univ. of N.Y. at Stony Brook*, 596 F. Supp. 2d 643, 656 (E.D.N.Y. 2009); acc*ord Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011). Within the Second Circuit, "a constitutionally protected property interest in land use regulation arises only if there is an entitlement to the relief sought by the property owner." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994).

Plaintiff alleges that his properties "have been intentionally [and] severely damaged by each defendant, including the repeated refusals by the [Town] and its officials to enforce their own town codes, state building codes, and planning board resolution that made it clear that [he] was to have full access to the [r]ight of [w]ay." (FAC ¶ 93.) He asserts that his right of way is now "unusable and severely damaged." (*Id.*) The Town Defendants move to dismiss on the grounds that Plaintiff has failed to allege a property interest to which he is entitled, and that even if he did have a property interest, there is adequate state court review of any land decision, which precludes a procedural due process claim. (*See* Town Ds' Mem. 13-18.)

I agree with the Town Defendants that Plaintiff has failed to state a claim for procedural due process. To the extent Plaintiff alleges that he has a property interest in the Town following its Codes, the Circuit has rejected this argument, finding that an individual does not have an interest in a Town's enforcement of discretionary codes. *See Gagliardi*, 18 F.3d at 192 (finding

---

[33] The FAC includes two claims titled "Equal Protection," (*see* FAC at 27, 35), but the second claim does not relate to equal protection and instead restates allegations raised elsewhere.

"no due process right" where plaintiff has "no right to demand" that defendants enforce zoning law). The Town Codes relating to land use are discretionary, and thus Plaintiff lacks a property interest in how they are applied. *See Rosendale v. Iuliano*, 63 F. App'x 52, 53 (2d Cir. 2003) (summary order) (finding "no cognizable property interest in the town's [discretionary] land use regulation and enforcement"); *see also Shervington v. Vill. of Piermont*, No. 09-CV-4273, 2012 WL 1757527, at *16 (S.D.N.Y. May 16, 2012) (no property interest in inspector's refusal to issue building permit where inspector had "discretion" to issue permit).

To the extent Plaintiff bases his claim on the infringement on his right of way, Plaintiff presumably has a property interest, but this claim still fails because Plaintiff has not alleged that the process to seek review of any decision with respect to the right of way is insufficient. To the contrary, it is well established that Article 78 proceedings, which Plaintiff could have pursued, satisfy due process requirements. *See Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 881-82 (2d Cir. 1996) (finding Article 78 proceeding afforded land owner adequate due process). I therefore dismiss Plaintiff's procedural due process claim.

4. <u>Substantive Due Process</u>

To plead a substantive due process claim, a plaintiff must allege facts establishing (1) a cognizable property interest (2) that was invaded in an arbitrary and irrational manner. *See O'Mara v. Town of Wappinger*, 485 F.3d 693, 700 (2d Cir. 2007); *Natale v. Town of Ridgefield*, 170 F.3d 258, 262-63 (2d Cir. 1999). A plaintiff must plead governmental conduct that "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Velez*, 401 F.3d at 93 (internal quotation marks omitted). Moreover, "[w]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of

substantive due process." *Kia P. v. McIntyre*, 235 F.3d 749, 757-58 (2d Cir. 2000) (internal quotation marks omitted).

Plaintiff alleges that he had a "vested right to the use and enjoyment of his property [and] to seek the permits and applications for which approval was sought." (FAC ¶ 97.) He contends that Defendants violated these rights when they "refused to enforce [the] town codes . . . in order to benefit Supervisor Murphy's best friends," (*id.*), and in effect, denied him the right to use and enjoy his land, (*id.* ¶ 98). Plaintiff asserts that this conduct was "arbitrary and capricious[,]" "utterly irrational[,] and so outrageous as to shock the conscience." (*Id.*)

Plaintiff's allegations are insufficient to state a substantive due process claim. As an initial matter, it is unclear on which property interest Plaintiff bases his claim. To the extent he relies upon the right to use his property as a farm, Plaintiff never alleges that he was denied this right, (*see* Town Ds' Reply Mem. 4 n.1); he only alleges that the Town denied him unspecific "permits and applications" for which he sought approval, (FAC ¶ 97).[34] To the extent Plaintiff bases his claim on the Town's obligation to enforce its Codes, this purported obligation, as explained above, provides no protected interest because Plaintiff cannot "demand that [Defendants] enforce" these discretionary laws. *See Rosendale*, 63 F. App'x at 53.

But assuming that Plaintiff had a property interest, he fails to state a substantive due process claim because he has not alleged that the Town and its conspirators engaged in conduct that is "so egregious, so outrageous" as to shock the conscience. *Velez*, 401 F.3d at 93. Plaintiff asserts that the Town denied him permits, allowed infringement of his right of way, and targeted his property for baseless violations in retaliation for his First Amendment activity and to benefit

---

[34] Construing the FAC liberally, I could interpret Plaintiff to be referring to his exclusion from the Agricultural District. (*See* FAC ¶ 41.) But such exclusion does not give rise to a protected property interest, *see Old St. George's*, 2009 WL 8668386, at *8-9 ("Plaintiffs have no entitlement to approval of their application for inclusion in the County's Agricultural District."), and even if it did, Plaintiff's claim would fail on other grounds.

his neighbors.  These types of allegations of "improper motives" and "selective enforcement" on the part of municipal officials fall into the "non-conscience-shocking category[y.]"  *Ruston v. Town Bd. Of Skaneateles*, No. 06-CV-927, 2008 WL 5423038, at *5 (N.D.N.Y. Dec. 24, 2008); *see Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285-86 (3d Cir. 2004).  Plaintiff's incantation of the words "arbitrary and capricious" and "utterly irrational and so outrageous" is insufficient. *See Twombly*, 550 U.S. at 555 ("formulaic recitations" of elements of claim "will not do"). Substantive due process does not forbid even "arbitrary or capricious" administrative conduct "correctable in state court."  *See Ceja v. Vacca*, 503 F. App'x 20, 21 (2d Cir. 2012) (summary order) (internal quotation marks omitted).  And even if this conduct were egregious, Plaintiff's claim would fail because the substance of his allegations overlaps with his First Amendment and equal protection claims.  *See Rother v. NYS Dep't of Corr. & Cmty. Supervision*, No. 12-CV-0397, 2013 WL 4774484, at *13 (N.D.N.Y. Sept. 04, 2013) (dismissing claim that "overlaps" with First Amendment, procedural due process and equal protection claims).  I therefore dismiss Plaintiff's substantive due process claim.

     5.  <u>Malicious Prosecution and Fourth Amendment</u>

     Plaintiff brings a claim for malicious prosecution arising from the wetlands violations filed against him.  He alleges that Defendants commenced and continued the prosecution of these "baseless" charges with full knowledge that there was "no probable cause."  (FAC ¶ 101.)  He further alleges that the prosecution was "terminated in [his] favor on July 23, 2011," (*id.* ¶ 27), that Defendants were "actuated by malice," (*id.* ¶ 107), and that his "liberty interests" were restricted when he "had to sit through hours of Court hearing[s]" on the charges, (*id.* ¶ 101). Defendants move to dismiss on the grounds that Plaintiff has failed to satisfy each element of a malicious prosecution claim.  (*See* Town Ds' Mem. 8-11.)

To state a malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must allege the elements of a state-law malicious prosecution claim as to a state actor. *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002). To state a malicious prosecution claim under New York law, a plaintiff must allege: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Jocks v. Tavernier,* 316 F.3d 128, 136 (2d Cir. 2003). A plaintiff must also have suffered a post-arraignment deprivation of liberty sufficient to implicate his Fourth Amendment rights. *Id.*

Although I question whether Defendants have deprived Plaintiff of his liberty interests,[35] I need not resolve that question because dismissal is proper on alternate grounds: the charges against Plaintiff were not terminated in his favor. "A termination is not favorable to the accused . . . if the charge is withdrawn or the prosecution abandoned pursuant to a compromise with the accused." *Rothstein v. Carriere*, 373 F.3d 275, 286 (2d Cir. 2004) (internal quotation marks omitted); *see Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 196-97 (2000). The Town Defendants submit three documents as exhibits confirming that the wetlands charges were disposed of through settlement, (*see* Rice Decl. Exs. C, D, E), and Plaintiff acknowledges that he reached a settlement with the Town, (*see* P's Opp. 2). I therefore dismiss the malicious prosecution claim

---

[35] The Second Circuit has noted that "it is hard to see how multiple appearances required by a court . . . can be attributed to the conduct of the officer who issues [the notice of appearance]." *Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010). For this reason, any malicious prosecution claim against Officer Barker or Gillis would have to be dismissed. Any claim against Mr. Woeltgens, who allegedly filed a false complaint against Plaintiff, suffers from a separate hurdle: as a private party, Mr. Woeltgens' complaint is too attenuated from the prosecution "to constitute joint action with state actors for purposes of § 1983." *Young v. Suffolk Cnty.*, 705 F. Supp. 2d 183, 196 (E.D.N.Y. 2010); *see, e.g.*, *Kash v. Honey*, 38 F. App'x 73, 75-76 (2d Cir. 2002) (summary order) (private party "maliciously . . . falsely charg[ing]" another with criminal conduct is insufficient, standing alone, to establish joint activity under § 1983); *Baez v. JetBlue Airways*, 745 F. Supp. 2d 214, 221 (E.D.N.Y. 2010) (holding that one incident of providing false information was not sufficient to make a private party a state actor). The same is true for any federal claim against the Murphys. Finally, to the extent Plaintiff brings a claim against Officer Toth, Plaintiff does not allege that Toth's report resulted in any prosecution.

on the ground that the termination was not favorable to Plaintiff, and need not consider the other grounds for dismissal.[36]

To the extent Plaintiff brings a separate Fourth Amendment claim for Defendants' entrance on his property, (*see* FAC ¶¶ 26, 31, 107), I find that Plaintiff has failed to plausibly allege that the Fourth Amendment was violated.  The Second Circuit has repeatedly held that no Fourth Amendment search occurs when a law enforcement officer enters a home's driveway, walkway, or similar area that is accessible to the general public.  *See, e.g., United States v. Reyes*, 283 F.3d 446, 465 (2d Cir. 2002) ("[W]e have found no Fourth Amendment violation based on a law enforcement officer's presence on an individual's driveway when that officer was in pursuit of legitimate law enforcement business.").  Although Plaintiff alleges that Defendants "search[ed] [his] properties repeatedly," (*id.* ¶ 107), he fails to specify the nature of these searches – indeed, he provides no facts about where, when or how – and therefore has not set forth facts rendering plausible the conclusion that a search within the meaning of the Fourth Amendment was conducted.  Rather, he seems to mistakenly regard as a search Defendants' entrance on his property to deliver appearance tickets or speak with him.  *See Nasca v. Cnty. of Suffolk*, No. 05-CV-1717, 2008 WL 53247, at *5-6 (E.D.N.Y. Jan. 02, 2008) (entry onto driveway to deliver summons not a search); *Woodhull v. Town of Riverhead*, 849 N.Y.S.2d 79, 80 (App. Div. 2007) (no search where officer entered property in order to post a stop-work order and "did not search or inspect the property").  I therefore dismiss Plaintiff's Fourth Amendment claim arising from Defendants' entrance on his property.[37]

---

[36] I find *Kilgore v. Kaufman*, 374 F. App'x 89 (2d Cir. 2010) (summary order), a case cited by Plaintiff, (*see* P's Opp. 21), inapposite.  In *Kilgore*, the Second Circuit suggested that a *pro se* plaintiff need not separately allege malice in order to state a claim for malicious prosecution.  374 F. App'x at 91.  The *Kilgore* decision does not affect my analysis because I dismiss Plaintiff's claim on different grounds.

[37] The FAC also alleges that Plaintiff had "no free will" during these "searches" and was "questioned [and] interrogated" in violation of his Fifth and Sixth Amendment rights.  (FAC ¶¶ 104, 124.)  To the extent Plaintiff

6. Stigma Plus (Procedural Due Process)

To bring a claim for stigma-plus, a plaintiff must allege "(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010) (internal quotation marks omitted). The state-imposed burden or alteration of status must be "*in addition* to the stigmatizing statement," *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (emphasis in original) (internal quotation marks omitted); any damage that merely flows from the injury to reputation is not actionable under § 1983, *see id.* "[T]he availability of adequate process defeats a stigma-plus claim." *Segal v. City of N.Y.*, 459 F.3d 207, 213 (2d Cir. 2006).

Plaintiff alleges that Defendants made various defamatory statements about him – for example, that he was "a law-breaker," "not a real farmer," and "paid off his wetland expert." (FAC ¶ 120.) He contends that these statements "damag[ed] . . . his business," (*id.*), and that Defendants took other injurious actions against him, all in connection with these statements, (*id.* ¶ 121).

Even assuming that Defendants' statements constitute defamation, Plaintiff has failed to plead a state-imposed burden, or "plus," to invoke the stigma-plus doctrine. Plaintiff's claim that he suffered harm to his business, for example, is the type of damage that merely flows from the injury to reputation and is insufficient to state a claim for stigma-plus. *See Sadallah*, 383 F.3d at

---

claims that he should have received *Miranda* warnings, I reject this argument because Fifth Amendment protections do not attach absent a custodial interrogation. *See United States v. Russell*, 916 F. Supp. 2d 305, 308 (E.D.N.Y. 2013). Plaintiff sets forth no facts suggesting he was in custody when he spoke to the officers. Likewise, any Sixth Amendment right to counsel would attach only after criminal charges were filed, *see United States v. Moore*, 670 F.3d 222, 233-34 (2d Cir. 2012) ("[T]he right to counsel does not attach until the prosecution is initiated."), and Plaintiff sets forth no facts plausibly suggesting that he was questioned about such charges at any such time. Further, his conclusory statement that he had "no free will" is insufficient to invoke the protections of the Fifth Amendment where he fails to allege that he was coerced into speaking with Defendants or asked Defendants to leave.

39 (damage to business reputation and deprivation of the good will was merely deleterious effect of defamation).  As for the Plaintiff's other injuries, he presents no facts plausibly connecting these injuries to Defendants' defamatory statements, *see Velez*, 401 F.3d at 89 (requiring the "stigma" and "plus" to be "sufficiently proximate"), and therefore these allegations fail to establish the requisite "plus."[38]  I thus dismiss Plaintiff's stigma-plus claim.[39]

### D. *Monell* Liability

Absent an underlying constitutional violation, a *Monell* claim cannot lie.  *See Bolden v. Cnty. of Sullivan*, 523 F. App'x 832, 834 (2d Cir. 2013) (summary order) ("[B]ecause the district court properly found no underlying constitutional violation, its decision not to address the County defendants' liability under *Monell* was correct."); *Segal*, 459 F.3d at 219 ("*Monell* does not provide a separate cause of action . . . it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.") (emphasis in original).  For this reason, I dismiss all claims against the Town,[40] with the exception of Plaintiff's First Amendment challenge to the Town sign laws.

---

[38] To the extent Plaintiff alleges that the "stigma" was the charges against him and the "plus" was the "intentional[] dragging out those proceedings and refusing to allow [him] a hearing after repeated requests," (*see* FAC ¶ 121), I find that the criminal proceeding against Plaintiff – during which time he was apprised of the charges against him and given the opportunity to challenge those charges – afforded him all the process that he was due, *see Spinelli v. City of N.Y.*, 579 F.3d 160, 169 (2d Cir. 2009) ("The touchstone of due process, of course, is the requirement that a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.") (internal quotation marks omitted), thus defeating his stigma-plus claim, *see Segal*, 459 F.3d at 213-14.

[39] Nor do I find *Dieterly v. Sorrenti*, No. 92-CV-4078, 1992 WL 310302 (E.D. Pa. Oct. 22, 1992), which Plaintiff cites as "on point," (*see* P's Opp. 22-23), persuasive.  In *Dieterly*, the court denied a motion to dismiss, finding plaintiff had alleged that defendants violated his rights by sending him a threatening letter and two citations in an attempt to deter him from pursuing a state court action and operating his business.  *Dieterly*, 1992 WL 310302, at \*2-3.  But *Dieterly* was decided before *Twombly* and *Iqbal*, which elevated the pleading standard, even for *pro se* complaints.  I further note that Plaintiff fails to explain why he believes *Dieterly* to be "on point" – he merely block copies the text of the opinion and bolds and underlines a few sentences.

[40] I therefore need not consider whether the FAC sufficiently alleges actions of Supervisor Murphy that would give rise to municipal liability.  *See Glenview Const., Inc. v. Bucci*, 165 F. Supp. 2d 545, 552-53 (S.D.N.Y. 2001) (town supervisor held under Town Law § 29 to be a final policymaker in § 1983 action against town).

E.  Neighbor Defendants

Plaintiff's failure to plead a constitutional violation also warrants dismissal of his claims

against the Neighbor Defendants.[41]  *See Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir.

1995) ("[A]lthough the pleading of a conspiracy will enable a plaintiff to bring suit against

purely private individuals, the lawsuit will stand only insofar as the plaintiff can prove the *sine*

*qua non* of a § 1983 action: the violation of a federal right.").  Even if the underlying claims had

survived, however, Plaintiff has not plausibly alleged that the Neighbor Defendants conspired

with the Official or DEC Defendants to violate his rights.

Private parties are ordinarily beyond the reach of § 1983 unless they were acting under

color of state law.  *Jae Soog Lee v. Law Office of Kim & Bae, PC*, 530 F. App'x 9, 9 (2d Cir.

2013) (summary order).  To establish state action pursuant to a conspiracy, a plaintiff must show:

"(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an

unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."

*Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).  "A merely conclusory

allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983

claim against the private entity."  *Id.* at 324.

Plaintiff has failed to plausibly allege that a conspiracy existed among the Neighbor,

Official and DEC Defendants.  Although Plaintiff pleads that Defendants "conspired [through]

emails, faxes, phone calls, and personal visits to the [Town] offices at the Elephant Hotel on

[R]oute 22 in Somers, N.Y.," (FAC ¶ 22), and that there is no [other] way the Town would have

independently addressed any such issue," (*id.*), he provides no details about these calls or visits,

*see Ciambriello*, 292 F.3d at 324-25 (no conspiracy claim where plaintiff failed to provide

---

[41] In their answer to the FAC, the Neighbor Defendants assert that the FAC should be dismissed, (*see* Docs. 152, 153, 154), but they have not filed a motion to dismiss.  I dismiss the claims against them *sua sponte.*

"details of time and place"), and his allegation that Defendants could not otherwise have learned

about his property is "merely conclusory," *id.* at 324.  Indeed, the Court can imagine any number

of ways, short of conspiracy, that Town officials could have learned of Plaintiff.  Plaintiff also

fails to allege facts plausibly supporting the existence of an agreement among Defendants that

effectively comprised the conspiracy.  *See Jae Soog Lee*, 530 F. App'x at 10 (no conspiracy

claim where plaintiff failed to allege conspiratorial agreement).  I therefore dismiss all claims

against the Neighbor Defendants.

F.  Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or deny leave to

amend."  *McCarthy*, 482 F.3d at 200.  "Leave to amend, though liberally granted, may properly

be denied for:  'undue delay, bad faith or dilatory motive on the part of the movant, repeated

failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Ruotolo v. City of

N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has now amended his complaint four times.  (*See* Docs. 2, 87, 93, 94.)  At the

last status conference on December 5, 2012, I advised Plaintiff of the deficiencies in his

complaint.  Plaintiff's failure to fix these deficiencies, after being provided with notice of them,

is alone sufficient ground to deny leave to amend *sua sponte*.  *See In re Eaton Vance Mut. Funds

Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the

plaintiffs have had two opportunities to cure the defects in their complaints, including a

procedure through which the plaintiffs were provided notice of defects in the Consolidated

Amended Complaint by the defendants and given a chance to amend their Consolidated

Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007). Further, there is no indication that Plaintiff is in possession of facts that could cure the problems in the FAC.[42] Having already told Plaintiff that his FAC would be his last, I decline to grant Plaintiff leave to amend *sua sponte*.

**IV.   Conclusion**

For the reasons stated above, the Town Defendants' motion is GRANTED IN PART and DENIED IN PART, and the DEC Defendants' motion is GRANTED. Plaintiff's claims brought pursuant to § 1983 against the Town Defendants are dismissed with prejudice with the exception of Plaintiff's First Amendment challenge to the Town sign laws, found primarily in Section 170, Article 22 of the Town Code. Plaintiff's claims brought pursuant to § 1983 against the DEC Defendants and Neighbor Defendants are dismissed with prejudice. To the extent Plaintiff brings any state law claims against Defendants other than the Town, those claims are dismissed without prejudice.[43] The case will go forward solely against the Town and solely as to Plaintiff's challenge to the Town sign laws. The Clerk of Court is directed to terminate the pending motions. (Docs. 107, 122.) The remaining parties – Plaintiff and the Town – are to appear for a status conference on **March 11, 2014 at 11:30 a.m.**

**SO ORDERED.**

Dated: February 25, 2014
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

[42] To the extent Plaintiff might seek to amend the FAC to allege that he posted his signs in November 2011, and not in 2008, as explained above, *see* page 18 n.25, this amendment would not remedy the problems in the FAC.

[43] I discern no state law claims against the Town itself.

33